```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          (FT. PIERCE)
                     CASE NO. 2:18-CR-14011-RLR-1
 3

 4   UNITED STATES OF AMERICA          Miami, Florida

 5
              vs.                       July 31, 2018
 6                                      Tuesday

 7   CHARLTON EDWARD LA CHASE
                                        Scheduled for 9:00 a.m.
 8                                      9:10 a.m. to 9:52 a.m.

 9                                      Pages 1 - 30

10   ---------------------------------------------------------

11
                      CHANGE OF PLEA HEARING
12
           BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
13              UNITED STATES MAGISTRATE JUDGE

14
     APPEARANCES:
15

16   FOR THE PLAINTIFF:      ROLANDO GARCIA, AUSA
                             United States Attorney's Office
17                           500 South Australian Avenue
                             Suite 400
18                           West Palm Beach, Florida  33401

19
     FOR THE DEFENDANT:      FLETCHER PEACOCK, AFPD
20                           Federal Public Defender's Office
                             109 North 2nd Street
21                           Ft. Pierce, Florida  34950

22
     STENOGRAPHICALLY
23   REPORTED BY:            GLENDA M. POWERS, RPR, CRR, FPR
                             Official Court Reporter
24                           United States District Court
                             400 North Miami Avenue, Room 08S33
25                           Miami, Florida  33128
```

1                    (Call to the order of the Court:)

2                    (Defendant Charlton Edward La Chase aided by an

3        American Sign Language Interpreter.)

4                    THE COURT:  Good morning.  You may be seated.

5                    COURTROOM DEPUTY:  Charlton Edward La Chase, Case

6        Number 18-14011-Criminal, Judge Rosenberg.

7                    THE COURT:  Counsel, state your appearance.

8                    MR. GARCIA:  Good morning, Your Honor.  Rolando Garcia,

9        on behalf of the United States.

10                   THE COURT:  Good morning, Mr. Garcia.

11                   MR. PEACOCK:  Fletcher Peacock, on behalf of

12       Mr. La Chase, who is also present before the Court.

13                   THE COURT:  Good morning, Mr. Peacock.

14                   MR. PEACOCK:  Good morning, Your Honor.

15                   THE COURT:  Did you have to come down this morning?

16                   MR. PEACOCK:  Yes, ma'am -- oh, no, last night, I came

17       down.

18                   THE COURT:  I understand that we are here for a

19       change of plea hearing for Mr. La Chase, who is assisted by a

20       sign interpreter; is that right?

21                   MR. PEACOCK:  That's correct, Judge.

22                   THE COURT:  Okay.  Let me ask Mr. Chase to be sworn.

23                   COURTROOM DEPUTY:  Raise your right hand, sir.

24                   Do you solemnly swear the testimony you're about to

25       give will be the truth, and nothing but the truth, so help you

1    God?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. Peacock, you can, likewise, sit, if

4    you're more comfortable.

5              MR. PEACOCK:  Is that how you want us to proceed, from

6    this table?

7              THE COURT:  Considering the interpreter -- as long as

8    the court reporter has you, I'm fine wherever you're

9    comfortable.

10             MR. PEACOCK:  Thank you.

11             THE COURT:  All right.

12             Mr. La Chase, let me address you directly.

13             First, let me confirm, are you comfortable with the

14   sign interpretation you're receiving?

15             THE DEFENDANT:  Yes, I understand everybody.

16             THE COURT:  If you have any questions or trouble with

17   the interpretation, please don't hesitate to bring that to our

18   attention, it's very important you understand everything that

19   occurs today.

20             THE DEFENDANT:  Absolutely, yes.  Yes, I will.

21             THE COURT:  And for the interpreter, I will try to go

22   slow, please tell me if it's too fast; okay?

23             THE INTERPRETER:  Thank you, Your Honor.

24             THE COURT:  Mr. La Chase, do you understand that you

25   are now under oath, and if you answer any of my questions

1    falsely, your answers may be later used against you in another

2    prosecution for perjury or making false statements?

3              THE DEFENDANT:  Yes, I understand that.

4              THE COURT:  And as I've already indicated, it's very

5    important you understand my questions before you answer.

6              So, in addition to letting us know you have trouble

7    with the interpretation, if you need to stop and consult your

8    attorney at any point, please feel free to do so, and just

9    indicate you need to talk with him.

10             THE DEFENDANT:  Okay, yes, thank you.

11             THE COURT:  Mr. La Chase, there are two judges in your

12   case, a District Court judge, and I am the Magistrate judge.

13   You have the right to insist that the District Court judge take

14   your change of plea in this case.

15             Do you understand that we are having this hearing today

16   pursuant to an order of reference from the District Court

17   judge, Judge Rosenberg, that was entered at the request of your

18   attorney, the Government, and yourself?

19             THE DEFENDANT:  Yes, I understand that.

20             THE COURT:  I am not the judge who will enter a

21   sentence in your case.  The District Court judge, Judge

22   Rosenberg, will make all decisions regarding your sentence to

23   be imposed in your case, and she will preside over your

24   sentencing hearing.  Do you understand that?

25             THE DEFENDANT:  Yes, I understand that.

1          THE COURT:  And do you consent to me taking your

2    change of plea?

3          THE DEFENDANT:  Yes, yes, I do.

4          THE COURT:  Mr. Peacock, do you consent to me taking

5    this change of plea?

6          MR. PEACOCK:  Yes, ma'am.

7          THE COURT:  Mr. Garcia?

8          MR. GARCIA:  Yes, ma'am.

9          THE COURT:  Mr. La Chase, I want to ask some questions

10   about you and your background.  Where were you born?

11         THE DEFENDANT:  In Miami, Florida.

12         THE COURT:  Are you a citizen then, of the

13   United States?

14         THE DEFENDANT:  Yes, I'm a U.S. citizen.

15         THE COURT:  Did you attend school here, in Miami?

16         THE DEFENDANT:  No, I went to school in St. Augustine,

17   at the Florida School For the Deaf and Blind.

18         THE COURT:  How far did you go in school, did you

19   complete high school?

20         THE DEFENDANT:  I graduated high school, yes, and then

21   I went on to college.

22         THE COURT:  Did you complete college?

23         THE DEFENDANT:  Yes, I did.  I had a certificate

24   diploma, not a degree.

25         THE COURT:  Which college did you go to?

1          THE DEFENDANT:  It's Southwest College For the Deaf,

2    it's in Texas.  It had like vocational programs and certificate

3    programs.

4          THE COURT:  And after college, have you worked?

5          THE DEFENDANT:  No, not in a formal sense, I was never

6    hired -- not with a big company or anything like that.  I did

7    go on to Gallaudet University in Washington, D.C., but I wasn't

8    able to complete my degree.

9          THE COURT:  Mr. La Chase, have you recently been

10   treated for any mental illness or addiction to a narcotic drug

11   of any kind?

12         THE DEFENDANT:  Yes, for mental illness, I have been

13   treated by a psychologist.

14         THE COURT:  What was the diagnosis for which you were

15   treated?

16         THE DEFENDANT:  I can't necessarily remember the name,

17   I'm not sure, I need assistance with that.  I don't know the

18   formal name for that.

19         THE COURT:  Mr. Peacock, I see you on your feet.

20         MR. PEACOCK:  Yes, ma'am, if I may.

21         Mr. La Chase was evaluated as  -- during the course of

22   this case, he was determined to be competent, but it was -- he

23   was diagnosed with bipolar disorder.  I have shared a copy of

24   that report with the Government, as well.

25         THE COURT:  I did see in this docket the pleadings

1    regarding competency, and the finding of competency.

2         Do you, Mr. Peacock, have any reason to doubt

3    Mr. La Chase's competency to enter a plea today?

4         MR. PEACOCK:  No.  The only thing I would -- and the

5    Court's already made note of it, the only thing I would suggest

6    is we go somewhat slow and deliberate.  I think he is

7    competent, he's been able to understand my advice and our

8    conversations as well.

9         THE COURT:  Okay.  Thank you for that.

10        Mr. La Chase, I understand the recent evaluation that

11   was performed, and its diagnosis.

12        My question's a little different.

13        Have you received treatment for any mental illness,

14   therapy or medication?

15        THE DEFENDANT:  In the past, I have been hospitalized

16   for mental illness, in the past, and I received treatment.

17        But, specifically, like ongoing therapy, no, it's not

18   something I've ever been able to take a part in because there

19   would be no interpretation provided, so I did not benefit.

20        THE COURT:  Have you been able to understand, so far,

21   all of my questions before answering them in this hearing

22   today?

23        THE DEFENDANT:  Oh, yes, I understand clearly, yes,

24   thank you.

25        THE COURT:  Are you currently under the influence of

1    any type of drug, medication, or alcoholic beverage?

2              THE DEFENDANT:  No, no, not at all.

3              THE COURT:  You're not receiving medication now while

4    you're in pretrial custody?

5              THE DEFENDANT:  No, no, they ignore all of my wishes,

6    they ignore all of my requests, they completely ignore me

7    because I'm deaf.  They haven't given me any medical assistance

8    whatsoever.  They're violating Section 504, they're violating

9    the ADA, I've had no interpreter services or access to

10   services.

11             THE COURT:  I understand, Mr. La Chase.

12             Has the absence of medication impaired your ability to

13   understand what's happening here today?

14             THE DEFENDANT:  No, I can understand what's happening.

15   I'm just thinking, you know, is there's a lot of issues I deal

16   with, I have other syndromes, I do have visual needs that need

17   to be attended to.  I'm in complete isolation.  There has been

18   no telephone for me to use, there's no access, I haven't been

19   able to reach out to the outside world.

20             I can't even contact my parents, I can't call anybody,

21   for eight months, just because I'm deaf, and they discriminate

22   against me as a deaf person.

23             THE COURT:  Mr. Peacock, do you want to take a break?

24             MR. PEACOCK:  Could you ask him if he wants to take a

25   break?

```
 1          THE DEFENDANT:  Just a short one, yes.

 2          MR. PEACOCK:  Thank you, Your Honor.

 3          THE COURT:  Mr. La Chase, I can see that you are very

 4   upset, and this is a very important day.  I want you to bear

 5   this warning in mind, if you need to stop, we will stop for any

 6   period of time that you need.

 7          There's a lot of questions that I have to ask to assure

 8   myself, and Judge Rosenberg, that you are making this important

 9   decision voluntarily and knowingly, and I can see that there

10   are a lot of things happening right now.

11          THE DEFENDANT:  That's fine, I can do this.  I

12   understand what I'm doing today, that's fine.  I have already

13   changed my change of plea.

14          THE COURT:  Okay.  Mr. La Chase, have you received a

15   copy of the indictment that's been filed in this case, the

16   superseding indictment?

17          THE DEFENDANT:  Yes, I did receive a copy, and I was

18   able to read it, in fact, I reviewed it again last night.

19          THE COURT:  And do you feel that you've had enough time

20   to discuss this case with your attorney, Mr. Peacock?

21          THE DEFENDANT:  Yes, yes, absolutely.

22          THE COURT:  Are you satisfied with the representation

23   and advice that you've received from Mr. Peacock?

24          THE DEFENDANT:  Oh, yes, fantastic, very wonderful,

25   very, very helpful.
```

```
 1              THE COURT:  And, Mr. Peacock, you have already
 2    indicated that you are satisfied that the defendant is
 3    competent to enter a guilty plea today.
 4              Let me ask, Mr. Garcia, do you have any reason to
 5    dispute the competency of this defendant?
 6              MR. GARCIA:  No, Judge.
 7              THE COURT:  Let me look with you at the plea agreement
 8    that I have received from Mr. Peacock in this case.
 9              Do you have before you a five-page document entitled
10    "Plea Agreement," bearing the case caption?
11              MR. PEACOCK:  Your Honor, we do have a copy, but you
12    have the only signed copy, I believe.
13              THE COURT:  I received this via e-mail, so I didn't
14    think I had an original.
15              MR. PEACOCK:  I thought you might have had the one we
16    executed this morning.
17              THE COURT:  No, I just printed the one that I received
18    over the weekend from you.
19              MR. PEACOCK:  We're missing the plea agreement, Judge.
20              COURTROOM DEPUTY:  Judge, I brought it into you.
21              THE COURT:  Is it this?
22              COURTROOM DEPUTY:  Yes.
23              THE COURT:  Okay.  Okay.  What I have does bear the
24    original signatures.  Okay, thank you, Nancy.
25              COURTROOM DEPUTY:  You're welcome.
```

1           Mr. La Chase.  You have a copy of the plea agreement

2    before you?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Let me ask you first to look at the last

5    page with me.  I see three signatures on this page.

6           The last is dated July 18th, 2018.  And above the name

7    Charlton Edward La Chase, defendant, it appears to bear your

8    signature.  Did you sign this plea agreement?

9           THE DEFENDANT:  Yes, yes, that's my signature.

10          THE COURT:  Mr. La Chase, did you have an opportunity

11   to read and discuss the plea agreement with Mr. Peacock before

12   you signed it?

13          THE DEFENDANT:  Yes, yes, I went through it, and I read

14   it again yesterday.

15          THE COURT:  Well, be patient with me, we're going to

16   review it again together.

17          THE DEFENDANT:  Sure.

18          THE COURT:  Now, under the terms of this agreement,

19   Mr. La Chase, you're agreeing to plead guilty to Count 1, 4,

20   and 5 of the indictment.  These counts charge you with

21   transmitting threats between interstate and foreign

22   communications, in violation of Title 18 U.S.C. 1875 C; is that

23   your understanding?

24          THE DEFENDANT:  Yes, that's correct.

25          THE COURT:  Oh, this is different.  I'm sorry.

1          The plea agreement that I have today says that you're

2   pleading to counts 2 and 3 of the superseding indictment?

3          MR. PEACOCK:  Correct, Your Honor.

4          THE COURT:  Okay.  All right, just let me reiterate

5   then, Mr. La Chase.  Both of these counts do charge you with

6   transmitting threats through interstate and foreign

7   communications through 18 U.S.C., Section 875C.

8          The Government can prove your guilt by showing -- I'm

9   sorry -- can prove your guilt in these charges only by showing

10  that you knowingly sent a communication in interstate or

11  foreign commerce, containing a true threat, to injure the

12  person of another, and that you sent the message with the

13  intent to communicate a true threat, or with the knowledge that

14  it would be viewed as a true threat.

15         Do you understand that's what the Government would have

16  to prove?

17         THE DEFENDANT:  Yes, I understand that.

18         THE COURT:  And the Government agrees to seek dismissal

19  or make a motion for dismissal of Count 1, 4, and 5 of your

20  superseding indictment, if you plead guilty, after sentencing;

21  is that your understanding of the agreement?

22         THE DEFENDANT:  Yes, that's correct.

23         THE COURT:  Now, Mr. La Chase, the maximum penalties

24  that may be imposed for each of the two counts for which you're

25  pleading guilty is five years imprisonment, to be followed by a

1    term of supervised release of up to three years.

2           In addition to a term of imprisonment and supervised

3    release, the Court may impose a fine of up to $250,000, and may

4    order restitution.

5           In addition, the Court will have to impose a special

6    assessment in the amount of a hundred dollars per count.

7           Do you understand that these are the maximum penalties

8    that may be imposed for your convictions on Counts 2 and 3?

9           THE DEFENDANT:  Yes, I understand that.

10          THE COURT:  I did not see any forfeiture count in this

11   indictment; is that right, Mr. Peacock?

12          MR. PEACOCK:  That's correct, Judge.

13          MR. GARCIA:  Yes, ma'am.

14          THE COURT:  Now, Mr. La Chase, with respect to

15   supervised release, do you understand that if you violate the

16   conditions of your supervised release that you could be given

17   additional time in prison?

18          THE DEFENDANT:  Yes.  Yes, I will follow all the

19   conditions.

20          THE COURT:  And with respect to your sentence,

21   Mr. La Chase, there's no parole in the federal system, it's

22   been abolished.  So if you're sentenced to prison, you will not

23   be released on parole.  Do you understand that?

24          THE DEFENDANT:  Oh, I didn't know that, but I guess I

25   learned something new now.

1             THE COURT:  Mr. La Chase, has anyone made you any

2    promise or assurance that is not in the plea agreement that

3    we're reviewing together to persuade you to enter your plea

4    today?

5             THE DEFENDANT:  No, no.  I spoke about this with my

6    lawyer, and I have a complete understanding of what's going on.

7             MR. PEACOCK:  If I may, Judge.  Just so the Court is

8    aware, there may -- depending upon how things unfold, there may

9    be a joint recommendation regarding sentencing, but we haven't

10   gotten to that point yet, so...

11            THE COURT:  Okay.  It's not part of this plea agreement

12   or required for the Court to accept; correct?

13            MR. PEACOCK:  That's correct, Judge.

14            THE COURT:  I appreciate the representation that there

15   may be a joint recommendation on sentencing but, Mr. La Chase,

16   as it stands today, the plea agreement that you're entering

17   into -- or have entered into, rather, with the Government does

18   not make any type of commitment with respect to sentence.

19            You understand, sir, that your sentence will be imposed

20   by Judge Rosenberg after considering the advisory federal

21   sentence guidelines that, as you sit here now, you do not know

22   what sentence will be imposed, and you will not be able to

23   withdraw your plea in the event that you're unhappy with your

24   sentence.  Do you understand that?

25            THE DEFENDANT:  Yes, I understand that.

1            THE COURT:  Mr. La Chase, specifically, has anyone

2    threatened you, or in any way tried to persuade you to accept

3    this plea agreement?

4            THE DEFENDANT:  No, no, no --

5            THE COURT:  Are you pleading --

6            THE DEFENDANT:  I thought about it.  I wasn't sure if I

7    was going to do it at first, I was really set on going to

8    trial, but I read through it and made the decision on my own to

9    avoid all the trouble.

10            THE COURT:  Okay.  We're going to talk about trial

11    rights in just a minute, but let me just ask you, Mr. La Chase,

12    to tell me, are you pleading guilty of your own free will

13    because you are, in fact, guilty?

14            THE DEFENDANT:  Yes.  Yes, I am guilty, yes.

15            THE COURT:  Mr. La Chase, do you understand that the

16    offense that you are pleading guilty to is a felony offense,

17    that if your plea is accepted by Judge Rosenburg, you'll be

18    adjudicated guilty of the offense, and that that adjudication

19    may deprive you of valuable civil rights, including the right

20    to vote, the right to hold public office, the right to serve on

21    a jury, and the right it possess any kind of firearm.

22            Do you understand that?

23            THE DEFENDANT:  I'm sorry, could you review those

24    again?  What do you mean, my civil rights?

25            I'm sorry, could you review those?

1        THE COURT:  Yes, Mr. La Chase.  There are certain civil

2    rights that you lose by being convicted of a felony offense,

3    and both of the offenses you are pleading guilty to are

4    felonies.  Those civil rights include:

5        The right to vote, the right to hold public office, the

6    right to serve on a jury, and the right to possess a firearm.

7        By becoming adjudicated guilty of a felony, you will be

8    giving up all of those rights.  Do you understand?

9        THE DEFENDANT:  Okay, yes, I understand.  Thank you for

10   explaining it again.

11       THE COURT:  Mr. Garcia, I'm going to ask you to provide

12   a factual proffer.

13       MR. GARCIA:  Yes, ma'am.

14       The Government would prove the following facts at

15   trial:

16       On January 29th, 2018, the defendant's sister,

17   Cassandra La Chase, told the Federal Bureau of Investigation

18   that in the past week her brother, Charlton Edward La Chase,

19   had made threats via text messages to harm her, and others, in

20   the name of ISIS, and that he wanted to be the first deaf

21   person to kill on the behalf of ISIS.

22       Cassandra La Chase provided printed copies of some of

23   the text messages she received from the defendant.  During one

24   text message from the defendant to Cassandra La Chase, on

25   January 23rd, 2018, the defendant stated "fuck you, I prepare

1    to get -- rent truck, flat bed, hit, kill people while festive

2    event by ISIS terrorism group told me.

3          "I've been planning to be the first deaf ISIS, kill

4    people, like NYC.

5          "Doctor guy hit, killed people, thank you for not

6    helping me, fuck you."

7          In another message, another text message from the

8    defendant to Cassandra La Chase, on January 23rd, 2018, the

9    defendant stated "first deaf terrorism history in U.S.A. Like

10   Las Vegas man, shoot over 500.  Omar Mateen shooter over a

11   hundred LGBT, fuck you."

12         And the third text message from the defendant to

13   Cassandra La Chase, on January 23rd, 2018, the defendant

14   stated, "ISIS want make all deaf community and hearing people

15   pay attention any news about me."

16         In another text message from the defendant to Cassandra

17   La Chase, on January 23rd, 2018, the defendant stated, "you

18   mess up my life in June 2016, plus DEC 2016, fuck, you be dead

19   soon, soon dead."

20         These text messages were sent by the defendant while

21   traveling internationally in Nicaragua, to Cassandra La Chase

22   who was located in Ft. Pierce, Florida, which is in the

23   Southern District of Florida.

24         Text messages extracted from Cassandra La Chase's phone

25   established a three-way text messaging group consisting of the

1   defendant, Cassandra La Chase, and her fiance, Clint Walker.

2   These messages begin on October 30th, 2017, and end on January

3   25th, 2018.  There are 219 text messages.

4        In a text message from the defendant to Cassandra

5   La Chase on January 23rd, 2018, the defendant asked Cassandra

6   La Chase to log onto his BRS account and add an international

7   plan.

8        BRS is a video relay service that allows the deaf and

9   speech impaired to communicate over video telephones and

10   similar technologies with hearing people in realtime, via sign

11   language.

12        According to the defendant, his provider wouldn't allow

13   him to call the United States.

14        The defendant wanted his sister to add the

15   international plan to his account.  Cassandra La Chase did not

16   respond to defendant's request.

17        On January 24th, 2018, Clint Walker text the defendant

18   and asked why the defendant's sister has to do it.  Why can't

19   the defendant's mother, or the defendant's wife do it?

20        To which the defendant responded that they don't know

21   how and then, again, provides his account information asking

22   that the international plan be added.

23        Clint Walker then told the defendant to find someone

24   else, to which the defendant replied that he cannot.

25        After the defendant again reiterates that this is an

1    emergency, Clint Walker responds as follows:

2          "She's not going to help you.  I don't want her to help

3    you.  You threatened her life, and my life, and my son's life.

4    None of us is going to help you.  Do not contact us anymore."

5          In a subsequent text message from Clint Walker to the

6    defendant, Clint Walker stated:

7          "He threatened my life and our son's life.

8          You said you were going to cut off my son's head like

9    ISIS.  You're lucky that I am a calm person and don't beat the

10   shit out of you.  Do not test me.  Do not text me.  Do not come

11   to our house ever again.  You have crossed the line too many

12   times, and you're not going to do it again.

13         "Do not contact us at all.

14         "Police and FBI will be involved and see all your

15   messages."

16         In a text message from the defendant to Clint Walker,

17   on January 24th, 2018, the defendant stated:

18         "I am gonna to shoot you, and truck hit you, killed,

19   ISIS."

20         The text messages were sent from the defendant's

21   telephone, telephone number XXX-XXX-4131.  The text messages

22   were sent by the defendant while in Nicaragua to Cassandra

23   La Chase and Clint Walker, who were located in Ft. Pierce,

24   Florida.

25         On January 27th, 2018, the defendant traveled from

1    Nicaragua to Costa Rica.  On February 4th, 2018, the defendant

2    flew from Costa Rica to Ft. Lauderdale.  The defendant was then

3    arrested at the Ft. Lauderdale International Airport.

4            THE COURT:  Mr. La Chase, did you hear and understand

5    the entire factual proffer by the Government?

6            THE DEFENDANT:  Yes, I did.

7            THE COURT:  Do you agree that the factual basis as

8    stated by the Government is accurate?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you understand the possible consequences

11   that I have reviewed with you for your plea of guilty in this

12   case?

13           THE DEFENDANT:  Yes, I do understand.

14           THE COURT:  I want to talk a little bit about the

15   sentencing guidelines and how they may apply in your case.

16           Have you and your attorney had the opportunity to talk

17   about how the sentencing guidelines will apply in your case?

18           THE DEFENDANT:  Yes, yes, he explained that to me.

19   Yes, absolutely.

20           THE COURT:  You understand that the Court, and

21   specifically Judge Rosenberg, will not be able to determine the

22   advisory guideline sentence for your case until after the

23   presentence report has been completed, and you and the

24   Government have had an opportunity to challenge the reported

25   facts and the application of the advisory guidelines

1    recommended by the probation office?

2          THE DEFENDANT:  Yes, I understand that.

3          THE COURT:  The sentence that's ultimately imposed by

4    Judge Rosenberg may be different from any estimate your

5    attorney has given you.  Do you understand that?

6          THE DEFENDANT:  Yes, I understand.

7          THE COURT:  The Court has the authority, under some

8    circumstances, to depart upward or downward from the guideline

9    range as it's calculated in your presentence investigation

10   report, and the Court will also examine other statutory

11   sentencing factors that may result in the imposition of a

12   sentence that's either greater or lesser than the advisory

13   guideline sentence.  Do you understand that?

14         THE DEFENDANT:  Yes, I understand, but just to make

15   sure, they couldn't go over the five-year maximum; correct?

16         THE COURT:  No, that is the statutory maximum.  That is

17   the highest possible sentence as to each count.

18         Now, as your plea agreement states, the Government

19   could ask, and the Court could impose, consecutive sentences,

20   so that the total combined maximum sentence could be 10 years,

21   but it is five years with respect to each count.

22         THE DEFENDANT:  Yes, I understand.

23         THE COURT:  And you understand, Mr. La Chase, that you

24   will not be permitted to withdraw your guilty plea based on the

25   guideline range, or the actual sentence, that's imposed by

1    Judge Rosenberg, even if it's different than what you expected

2    or that your lawyer predicted?

3              THE DEFENDANT:  Yes, I understand that.

4              THE COURT:  Now, Mr. La Chase, you understand that

5    under some circumstances, the Government may have the right to

6    appeal any sentence imposed by the District Court judge in this

7    case, but you have executed a waiver of your appellate rights,

8    at paragraph eight of your plea agreement.

9              You understand that, ordinarily, you would have the

10   right to appeal a sentence, but you're giving that right up, at

11   paragraph eight, in exchange for the undertakings that the

12   Government has made in this agreement, but you will not have

13   the right to appeal unless the sentence exceeds the maximum

14   permitted by the statute, or is the result of an upward

15   departure or upward variance from advisory guideline range the

16   Court establishes at sentencing.

17             Do you understand you're giving up that right?

18             THE DEFENDANT:  Yes, I understand.

19             THE COURT:  Have you had an opportunity to discuss the

20   appellate waiver -- (Interruption.)

21             It just does that sometimes, Nancy, I don't know what

22   to tell you, try picking up and hanging up the phone.

23             I beg your pardon, they just fixed this console, but it

24   just does that.  Okay.  All right.

25             Have you had the opportunity, Mr. La Chase, to discuss

1    the appellate waiver with your attorney, Mr. Peacock?

2          THE DEFENDANT:  Yes, but again, I want to clarify.  So

3    I can't appeal based on the decision, but if I'm given 17 or 18

4    years over the maximum, I could appeal that?

5          THE COURT:  That's right.  If the sentence imposed

6    exceeds the statutory maximum or is the result of an upward

7    departure or upward variance, those are the exceptions under

8    your plea agreement that would allow you to appeal.

9          Mr. Peacock, have I correctly understood your plea

10   agreement?

11         MR. PEACOCK:  Yes, ma'am.

12         THE COURT:  Okay.  Mr. La Chase, understanding that

13   appellate waiver, is that what you want to do?

14         THE DEFENDANT:  Yes, yes, I do want to change my plea.

15         THE COURT:  Mr. Peacock, are you satisfied that the

16   defendant understands the appellate waiver?

17         MR. PEACOCK:  Yes, Your Honor.

18         THE COURT:  Now, I want to -- Mr. La Chase, just talk

19   about one other provision of your plea agreement that we didn't

20   before, in terms of the sentencing guidelines.

21         At paragraph seven of your plea agreement, the

22   Government is agreeing to reduce your guideline calculation by

23   two levels for your acceptance of responsibility, and move for

24   a third point based on your timely acceptance, in the event

25   that your guideline range is calculated at a level 16 or

1    higher.

2         But that recommendation, Mr. La Chase, is conditioned

3    on you making a full and accurate, complete disclosure to the

4    probation office of the circumstances surrounding the relevant

5    offense.

6         It will not have to make that recommendation if it's

7    found that you have misrepresented any facts to the Government

8    prior to entering the plea agreement, or if you commit any

9    other misconduct after entering into the plea agreement.

10        Do you understand that those are the conditions on

11   which the Government will be recommending that three point

12   reduction?

13        THE DEFENDANT:  I understand all of that, yes, I

14   understand everything, yes, absolutely, I understand.  I'm

15   going to follow whatever the guidelines are and be completely

16   honest with the Federal Government, whatever they need.

17        THE COURT:  Okay.  Mr. La Chase, I told you we would

18   talk about some trial rights that you have.  Let's do that now.

19        Do you understand, first and foremost, that you have a

20   right to plead not guilty to all of the offenses charged and

21   persist in that plea of not guilty?

22        THE DEFENDANT:  Yes, I know that, but I'm very afraid

23   of trial.  I think the risk of being found guilty and the

24   sentencing could be much, much worse in that case, so that was

25   the reason that I choose to plead guilty.

1          THE COURT:  I understand that, Mr. La Chase.

2          But you do understand that you have a right to a trial

3     by jury; is that right?

4          THE DEFENDANT:  Yes, I understand that.  Thank you.

5          THE COURT:  Do you understand, sir, that at trial you

6     would be presumed innocent, and that the Government would have

7     to prove your guilt beyond a reasonable doubt?

8          THE DEFENDANT:  Yes, I understand that.

9          THE COURT:  At trial, you would have the right to

10    assistance of counsel for your defense, Mr. Peacock, at trial,

11    and at every other stage of the proceedings; you have the right

12    to see and hear the witnesses, have them cross-examined in your

13    defense; the right on your own part to decline to testify,

14    unless you voluntarily elect to do so; and the right to compel

15    attendance of witnesses to testify in your defense.

16         Do you understand you have all of these rights?

17         THE DEFENDANT:  Yes, I understand.

18         THE COURT:  Do you understand, Mr. La Chase, that you

19    have the right, should you decide not to testify, or to put on

20    any evidence, and these facts cannot be used against you?

21         THE DEFENDANT:  Yes, I understand.

22         THE COURT:  Finally, Mr. Chase, do you understand that

23    by entering a plea of guilty, if that plea is accepted by the

24    Court, there will be no trial and you will have waived, or

25    given up, your right to a trial, as well as all the other

1    rights associated with the trial as I just described them?

2            THE DEFENDANT:  Yes, I understand that.

3            THE COURT:  Okay.  Mr. Peacock, is there any part of

4    the colloquy that I've missed?

5            MR. PEACOCK:  No, Your Honor, I don't believe so.

6            THE COURT:  Mr. Garcia?

7            MR. GARCIA:  No, Your Honor.

8            THE COURT:  Mr. La Chase, how do you now plead to

9    Counts 2 and 3 of the indictment, guilty or not guilty?

10           THE DEFENDANT:  To those two counts, I plead guilty,

11   and to Count 3 -- it's 2 and 3.  It's 2 and 3; right?

12           THE COURT:  It is.

13           THE DEFENDANT:  -- to 2 and 3, I plead guilty, yes.

14           THE COURT:  And the Government will move to dismiss

15   Counts 1, 4, and 5 at the time of sentencing, according to your

16   plea agreement; right, Mr. Garcia?

17           MR. GARCIA:  Yes, ma'am.

18           THE COURT:  I find that the defendant is fully

19   competent and capable of entering an informed plea; that the

20   defendant is aware of the nature of the charges and the

21   consequence of the plea; and that the plea of guilty is a

22   knowing and voluntary plea, supported by an independent basis

23   in fact, containing each of the essential elements of the

24   offense.

25           I further find that the waiver of appellate rights was

1   a knowing and voluntary waiver made after consultation with

2   counsel.

3           I will, therefore, recommend that the District Court

4   judge accept this plea and adjudicate the defendant guilty of

5   Counts 1 and 2, the offenses to which he -- 2 and 3 -- of the

6   offense to which he pled guilty.

7           A written presentence report will be prepared by the

8   probation office to assist the District Court judge with

9   sentencing.

10          Mr. La Chase, you will be asked to give information for

11  the report, and your attorney will be present, if you wish.

12  The Court will permit you and your attorney to read the

13  presentence report and file any objections to the report before

14  the sentencing hearing.

15          You and your attorney will have an opportunity to speak

16  on your behalf at the sentencing hearing.  The defendant will

17  remain in the custody of the U.S. Marshals pending sentencing.

18          The sentencing date will be set by your District Court

19  judge -- Nancy, did Judge Rosenberg communicate down to us what

20  that date is?

21          COURTROOM DEPUTY:  No.

22          THE COURT:  Okay.  So you'll look for notice from Judge

23  Rosenberg as to the sentencing date.

24          In the interim, I will prepare a written Report and

25  Recommendation that recommends that the District Court judge

1    accept the guilty plea and adjudicate Mr. La Chase guilty with

2    respect to Counts 2 and 3.

3         MR. PEACOCK:  Your Honor, if you may, I don't know

4    whether you want to entertain this or whether you want me to

5    bring this to Judge Rosenberg, but the defense would request an

6    expedited PSI in this case.

7         Mr. La Chase is housed at FDC, and I think, as the

8    Court got a little glimmer of, it's very difficult for him

9    there.  And we're just of the opinion that the sooner that this

10   can get to sentencing, the better it will be, for all

11   concerned.

12        THE COURT:  Mr. Garcia, do you have a position on the

13   motion?

14        MR. GARCIA:  Your Honor, I'm all for, you know, the

15   sooner, the better.

16        The only issue is, I don't know what specific length of

17   time probation would require or would want to complete a

18   thorough PSI, so I don't want to unduly burden them.

19        But I'm all --  I agree that, you know, that the

20   sooner, the better.

21        THE COURT:  Okay.

22        MR. PEACOCK:  I'm sorry, Judge, we're not asking for an

23   abbreviated one.  We're just asking it be expedited as quickly

24   as possible.

25        THE COURT:  Well, what I think you may have the ability

1    and opportunity to do, is agree with respect to either a

2    shortening of an objection period to the PSI.

3         What the Court might be able to do is impose a

4    sentencing date that is earlier than 70 days, and ask probation

5    to accommodate a report that's disclosed a little bit earlier,

6    but it may cut into your objection state.

7         I will, if I can, include it within the Report and

8    Recommendations, if it's within the scope of the referral, but

9    not -- either way, the request will be, at least, memorialized

10   in the Report and Recommendation, so that Judge Rosenberg can

11   take it into consideration.

12        But I'm not in a position to change your sentencing

13   date, but I will let her know the position and what I observed

14   at the sentencing -- I mean, at the change of plea hearing.

15        MR. PEACOCK:  Thank you, Judge.

16        THE COURT:  Sure thing.

17        MR. GARCIA:  Thank you, Judge.

18        THE COURT:  Is there anything further with respect to

19   Mr. La Chase?

20        MR. GARCIA:  No, Your Honor.

21        MR. PEACOCK:  No, Your Honor.

22        THE COURT:  Have a safe trip back up, Mr. Peacock, and

23   good luck to you, Mr. La Chase.

24        MR. PEACOCK:  Thank you, Your Honor.

25        (Proceedings concluded at 9:52 a.m.)

```
 1
 2                    C E R T I F I C A T E
 3
         I hereby certify that the foregoing is an
 4
      accurate transcription of the proceedings in the
 5
      above-entitled matter.
 6
 7
      November 22nd, 2018    Glenda M. Powers
 8                           GLENDA M. POWERS, RPR, CRR, FPR
                             United States District Court
 9                           400 North Miami Avenue, 08S33
                             Miami, Florida 33128
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```